UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRANKO PRPA MD LLC

        Plaintiff,

v.                                          Case No. _____

UNITED HEALTHCARE SERVICES, INC.

        Defendant.

## COMPLAINT

NOW COMES Plaintiff, Branko Prpa MD LLC ("Plaintiff"), and as and for its Complaint against Defendant, United Healthcare Services, Inc. ("UHC" or "Defendant"), alleges and shows unto the Court as follows:

## INTRODUCTION

Plaintiff brings this lawsuit in order to recover underpayments related to necessary medical care that Plaintiff, through its principal, Branko Prpa, M.D. ("Dr. Prpa"), provided to Defendant's members. Despite engaging in all of UHC's required processes and procedures for providing out-of-network services, engaging and exhausting all available remedies, and fully participating in all available dispute resolution procedures, both through UHC and through an independent process, UHC refuses to pay Plaintiff for critical surgery services that Dr. Prpa provided to UHC's members. Plaintiff is therefore forced to file this lawsuit in order to recover the money that Defendant owes for his necessary medical services.

## PARTIES

1. Plaintiff is a Wisconsin limited liability company, with its principal place of business located at 7200 Washington Avenue, Suite 101, Mount Pleasant, Wisconsin 53406.

1

2. Upon information and belief, Defendant is registered as a corporation in Minnesota, and its principal place of business is located at 9700 Health Care Lane, Minnetonka, Minnesota 55343. Defendant practices substantial business in Wisconsin. Defendant can be served with process through its registered agent in Wisconsin, United Agent Group, Inc., 301 South Bedford Street, Suite 1, Madison, Wisconsin, 53703.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over Plaintiff's claim, because there is complete diversity of citizenship between the parties, and the amount in controversy is greater than $75,000. 28 U.S.C. § 1332(a)(1).

4. This Court has personal jurisdiction over Defendant because, among other things, Defendant does substantial and not isolated activities and business in Wisconsin and in this District, including, but not limited to, doing substantial business with Plaintiff while Plaintiff was located and operating in Wisconsin and in this District. Defendant also maintains offices in Wisconsin. As such, the Court's exercise of personal jurisdiction over Defendant comports with due process.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial portion of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

6. Dr. Prpa has practiced medicine for 30 years, and has performed over 5,000 spinal surgeries, many of those for UHC's members. Dr. Prpa provides services for the most difficult cases, where patients have been unable to receive care because of the severity of their injuries, or when necessary to revise previous work performed by others. Dr. Prpa's extensive training, research, and experience often make him the only provider able to address the needs of patients

suffering from debilitating pain and other maladies. However, UHC refuses to acknowledge the unique nature and value of the services that Dr. Prpa provides to UHC members.

7. Dr. Prpa is not a network provider with Defendant, but instead obtains prior authorization from UHC before performing procedures for Defendant's members.

8. Over the past several years, Defendant has engaged in systemic efforts to underpay, or outright refuse to pay, for Dr. Prpa's services, and the services of providers affiliated with Dr. Prpa's practice. Defendant's efforts have devolved into a intentional trap, where Dr. Prpa relied on UHC's prior authorizations, and believed in good faith that he was providing services and that Defendant would, in turn, reimburse Plaintiff, but time and again, Defendant rejected the invoices and refused to pay Plaintiff.

9. At times, UHC has attempted to force Dr. Prpa into the procedures outlined in the "No Surprises Act" ("NSA"), disregarding Dr. Prpa's compliance with the terms of the law, and its enactment by various regulatory authorities. At other times, Defendant has outright rejected, or unfairly reduced, its proposed compensation in its explanation of benefits ("EOB") and related remittances, or lack thereof. Dr. Prpa has followed all necessary procedures outlined in the NSA, and has engaged in all applicable administrative processes. However, Defendant repeatedly refuses to pay for the services that Dr. Prpa provided to Defendant's members. That occurs despite Dr. Prpa's efforts to clear, in advance, all issues with UHC and his patients in order to ensure, before proceeding, that all parties are fully informed of the nature of the services and the substantial need for them. And yet, the UHC machine continuously ignored its promises and representations, and instead hides behind a shield of paperwork and processes. Inevitably, that game had only one result: UHC refusing to pay Dr. Prpa what he is owed for providing highly-specialized treatment for patients who were in need.

10. Over the past several years, Dr. Prpa has performed at least 32 procedures, at a cost of approximately $5.2 million, for UHC members, and submitted those claims for reimbursement through UHC's billing system, while following all applicable procedures. And yet, UHC has paid Plaintiff less than $180,000 in total reimbursement for those 32 procedures. Despite Plaintiff's appeals, protests, and engagement, in good faith, in all UHC and Independent Dispute Resolution ("IDR") processes, UHC has refused to pay the amounts billed for those procedures.

11. One recent example illuminates UHC's improper behavior. On or about February 5, 2025, Dr. Prpa and a physician assistant, Luke Harbers, performed a complicated spinal procedure for a UHC member, which was later billed to UHC and processed as claim number EX63632542. In total, Dr. Prpa billed UHC $72,742.05 for his services, and $71,242.05 for the physician assistant's services. UHC initially paid $8,675.46 related to Dr. Prpa's individual services, and $1,214.56 for the physician assistant's services. Dr. Prpa appealed that determination to UHC, and was directed to participate in the IDR process.

12. Dr. Prpa fully participated in the IDR process outlined by the NSA. Based on the billing and other information available, Dr. Prpa challenged the resolution of the following procedure codes:

| Claim Number | Service Code | Prevailing Party Amount |
|---|---|---|
| EX63632542 | 22551 (Prpa) | $25,581.15 |
| EX63632542 | 22551 (Harbers) | $25,581.15 |
| EX63632542 | 22552 | $5,903.55 |
| EX63632542 | 22853 | $7,150.00 |
| EX63632542 | 22846 | $12,403.80 |
| EX63632542 | 76000 | $1,500.00 |
| | | |
| Total Claimed | | **$78,119.65** |
| Prior Payment | March 31, 2025 | ($1,214.56) |
| Prior Payment | May 19, 2025 | ($8,675.46) |
| | | |
| **Total Outstanding for Claim** | | **$68,229.63** |

13. Plaintiff received a favorable determination from the IDR on October 20, 2025. That letter directed Defendant to pay Plaintiff the amounts listed above, less payments already made. And yet, when Dr. Prpa reached out to UHC again, UHC responded with another letter that was dismissive of his request.

14. After Plaintiff's subsequent, informal efforts to reach out to UHC's counsel were unsuccessful, on December 17, 2025, Plaintiff sent a letter to UHC demanding the remaining outstanding balance plus interest, costs, and attorneys' fees from Defendant as full payment for services he and his affiliated providers supplied. The demand included the difference between the value of Dr. Prpa's services as determined by the IDR entity and the amount already paid. Rather than responding to that request in a professional manner and in good faith, UHC ignored the demand, and sent an automated request that *again* directed Dr. Prpa to the IDR process. UHC eventually made an additional payment of $43,863.04, but that still ignores the directive of the IDR process to pay Dr. Prpa a total of $78,119.65, and leaves $20,203.55 outstanding on that one claim alone.

15. That case demonstrates that, even when Dr. Prpa played UHC's game and prevailed, UHC still refused to pay. That case also demonstrates the futility of trying to engage in good faith with UHC.

16. However, unfortunately, that is only one case, and there are dozens of additional claims that are similarly situated, and with respect to which UHC has followed a similar script of providing only obstructive responses.

17. Given UHC's tactics and actions, Dr. Prpa would be fully justified in refusing to provide any additional services for UHC's members. However, because patients in his community

5

often have no other option for relief from their debilitating conditions, and many of them are commonly experiencing the worst situation of their lives, Dr. Prpa continues to provide services – notwithstanding UHC's blatant disregard for its members and its obligations to them and their providers.

18. UHC's flagrant disregard for the value of his work and, more significantly, the value and relief that UHC's members receive, as well as UHC's abuse of legal procedures and appeal practices, unfortunately leaves Dr. Prpa with no choice but to seek judicial remedies for the remaining underpayments on all claims, which are fully known to UHC and have been repeatedly enumerated, appealed, and ultimately ignored by UHC. The specific details of those claims are not provided in full in this Complaint because doing so would require the public disclosure of Protected Health Information, but can and will be provided through an appropriate Protective Order and secure transmission process. And, of course, UHC is already fully aware of all relevant details related to the claims at issue, and has records of them.

## FIRST CAUSE OF ACTION: QUANTUM MERUIT

19. Dr. Prpa re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

20. Recovery under quantum meruit is founded on an implied contract to provide reasonable compensation for services performed. *See, e.g.*, *Ramsey v. Ellis*, 168 Wis. 2d 779, 784, 484 N.W.2d 331 (1992). To establish the existence of an implied contract under a theory of quantum meruit, the plaintiff must demonstrate that: (1) the defendant requested the plaintiff's services; (2) the plaintiff performed; and (3) that the plaintiff provided those services with a reasonable expectation of compensation. *Theuerkauf v. Sutton*, 102 Wis. 2d 176, 306 N.W.2d 651 (1981).

21.     Dr. Prpa provided services for the most difficult cases, where patients were unable to receive care because of the severity of their situation, or when they needed revisions to work that others previously performed.  Dr. Prpa's extensive training, research, and experience often made him the only provider able to address the needs of patients suffering from debilitating pain and other maladies.  Defendant was aware of that, because Dr. Prpa frequently performed spinal surgeries on Defendant's members, and Dr. Prpa obtained prior authorization from UHC before performing those procedures.  Dr. Prpa also otherwise complied with UHC's process and demands.

22.     Because Dr. Prpa is not a network provider for Defendant, he had no obligation to provide for the medical care of UHC's members.  However, on February 5, 2025, as described above, and on at least 31 other occasions, Dr. Prpa rendered valuable medical services to Defendant's insureds, and conferred a direct benefit on Defendant by satisfying covered medical treatment of Defendant's members.

23.     Defendant accepted the benefits of Dr. Prpa's services, because Dr. Prpa only performed them after obtaining prior authorization, and Defendant processed the claim through its administrative and payment systems, thereby evidencing a request for, and acceptance of, Dr. Prpa's services.  For example, as described above, Defendant processed the claim identified as Claim Number "EX63632542," and issued at least two previous payments on March 31, 2025, and May 19, 2025.

24.     That same pattern and practice extended to the full range of claims at issue, which Dr. Prpa can and will provide through an appropriate, secure mechanism, and after the entry of an appropriate Protective Order – although UHC already has all of the information related to those claims in its own records, and because Dr. Prpa has engaged in all of UHC's required processes related to them.

25. Dr. Prpa provided the services with a reasonable expectation of compensation from Defendant. The reasonable value of the services that Dr. Prpa rendered to Defendant's insureds is at least $5.2 million. And yet, UHC has only reimbursed Plaintiff less than $180,000 for those services. UHC's failure to reimburse Plaintiff leaves Plaintiff with unpaid damages of at least $5 million, not counting interest or other costs. UHC must pay Dr. Prpa all amounts outstanding.

26. Worse, in some cases, Defendant has ignored the IDR entity's determination – even after insisting that Plaintiff proceed to IDR in the first place – and refused to make the required payment notwithstanding the IDR's determination.

27. In short, Defendant is liable for quantum meruit because: (1) Defendant requested and accepted Dr. Prpa's services for its insureds; and (2) Dr. Prpa provided those services only after UHC approved the procedures, and therefore left Dr. Prpa with a reasonable expectation of compensation.

28. Defendant must make Dr. Prpa whole for the value of his services, which is the amount of the remaining unpaid balances, at least $5,029,025.79, because UHC's retention of those amounts is inequitable and unjust.

## SECOND CAUSE OF ACTION: BREACH OF IMPLIED CONTRACT

29. Dr. Prpa re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

30. Under Wisconsin law, an enforceable contract requires: (1) an agreement between the parties; (2) manifested by their conduct; (3) supported by consideration. *Watts v. Watts*, 137 Wis. 2d 506, 405 N.W.2d 303 (1987); *Ramsey v. Ellis*, 168 Wis. 2d at 784.

31. For medical procedures such as those at issue, the prior authorization process involves a structured exchange that involved the following steps: (1) Dr. Prpa submitted clinical

information and a request for authorization; (2) UHC reviewed the submission, confirmed coverage and medical necessity, and issued an authorization number; (3) in reliance on that authorization, Dr. Prpa then rendered services to UHC's members. That course of dealing – which was repeated across multiple patients and encounters – established an implied agreement that UHC would pay for the services that it authorized before Dr. Prpa performed them.

32. Dr. Prpa provided services for the most difficult cases, where patients were unable to receive care because of the severity of their situation, or when they needed revisions to work that others previously performed. Dr. Prpa's extensive training, research, and experience often made him the only provider able to address the needs of patients suffering from debilitating pain and other maladies. Defendant was aware of that, because Dr. Prpa frequently performed spinal surgeries on Defendant's members, and Dr. Prpa obtained prior authorization from UHC before engaging in those procedures. Dr. Prpa also otherwise complied with UHC's process and demands.

33. The parties therefore had a valid, enforceable implied contract.

34. Despite the parties' implied contract, UHC has breached, by failing to perform its obligations to pay Dr. Prpa the amounts required for his services.

35. Dr. Prpa has been damaged by UHC's breach.

36. Defendant must make Dr. Prpa whole for the value of his services, which is the amount of the remaining unpaid balances, at least $5,029,025.79.

**THIRD CAUSE OF ACTION: UNJUST ENRICHMENT (IN THE ALTERNATIVE)**

37. Dr. Prpa re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

38. In the unlikely event that UHC is not found liable for breaching the parties' contract, then, in the alternative, UHC is still liable to Plaintiff under the unjust enrichment doctrine.

39. Unjust enrichment occurs when one party confers a benefit on another, the defendant appreciates or has knowledge of the benefit, and acceptance or retention of the benefit under the circumstances makes it inequitable for the defendant to refuse to pay for the benefit. *See, e.g.*, *Puttkammer v. Minth*, 83 Wis. 2d 686, 266 N.W.2d 361 (1978).

40. Dr. Prpa conferred a benefit upon UHC by treating at least 32 of UHC members, for whose medical treatment UHC was obligated to pay, because the members paid UHC substantial premiums to cover medical treatments such as those at issue.

41. Defendant had knowledge of those benefits directly and explicitly through the services having been provided by Dr. Prpa, and through prior authorization process with Plaintiff.

42. Defendant received substantial premium payments that it was unjustly and illegally able to retain by not covering the services at an appropriate and reasonable rate.

43. Defendant accepted and retained those benefits without providing just compensation to Dr. Prpa, which now creates inequity by UHC's retention of that benefit.

44. Dr. Prpa suffered actual damages as a result of Defendant's unjust retention of those benefits in the amount of at least $5,029,025.79.

**FOURTH CAUSE OF ACTION: PROMISSORY ESTOPPEL (IN THE ALTERNATIVE)**

45. Dr. Prpa re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

46. In the unlikely event that UHC is not found liable for breaching the parties' contract, then, in the alternative, UHC is still liable to Plaintiff under the promissory estoppel doctrine.

47. Promissory estoppel includes the following elements: (1) a promise that the promisor should reasonably expect to induce action or forbearance; (2) actual reliance on the promise; and (3) injustice can be avoided only by enforcement. *See, e.g.*, *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 133 N.W.2d 267 (1965).

48. Even after Defendant provided prior authorization for the services at issue, and then allowed its members to receive the substantial benefit of Dr. Prpa's services, Defendant then nevertheless forced Plaintiff to engage in appeals and the IDR process rather than paying Plaintiff.

49. By issuing prior authorization, UHC made a promise that it would cover the authorized services.

50. Dr. Prpa reasonably relied on that promise by providing the services.

51. UHC's refusal to pay after Dr. Prpa had already performed the services created the precise injustice that promissory estoppel is designed to remedy.

52. As a result of Defendant's promise that the services would be covered, Dr. Prpa provided surgery to members of UHC, to the members' benefit and to the benefit of UHC.

53. In some cases, Plaintiff also prevailed in the IDR process. Plaintiff participated in that process because UHC insisted upon it. By insisting that the parties participate in the IDR process, UHC represented – explicitly or implicitly – that UHC would agree to be bound by the IDR's determination. And yet, even when the IDR determination was clear, UHC refuses to comply with the determination.

54. Injustice can only be avoided by fully compensating Dr. Prpa for his services.

11
HB: 4910-2145-1910.3
Case 2:26-cv-00409-BHL      Filed 03/13/26      Page 11 of 16      Document 1

55. Plaintiff has been damaged by UHC forcing him into an abusive process to frustrate and delay any payments, and then again by UHC ultimately failing to even abide by the IDR determination about the appropriate amount of payment for the services that Dr. Prpa rendered.

56. Dr. Prpa suffered actual damages as a result of Defendant's actions in the amount of at least $5,029,025.79.

## FIFTH CAUSE OF ACTION: VIOLATION OF
## WIS. STAT. § 628.46 – TIMELY PAYMENT OF CLAIMS

57. Dr. Prpa re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

58. Wisconsin's timely-payment Statute requires insurers to "promptly pay every insurance claim." A claim is overdue if not paid within 30 days after the insurer receives written notice of a covered loss and the amount of loss. The Statute imposes 12% simple annual interest on overdue payments. *See* Wis. Stat. § 628.46(1); *Kontowicz v. American Standard Ins. Co. of Wis.*, 291 Wis. 2d 308, 714 N.W.2d 105 (2006). The insurer must have "reasonable proof that it was not responsible for payment," which generally means the coverage must be fairly debatable. *See Froedtert Memorial Lutheran Hospital, Inc. v. National States Ins. Co.*, 317 Wis. 2d 54, 765 N.W.2d 251 (2009).

59. For the procedures at issue, UHC gave prior authorization, meaning there is no debate about the coverage applicable.

60. In the context of its malicious actions, UHC should be held to account under the timely payment Statute, and required to pay not only all outstanding claims, but also required to pay 12% interest on the overdue amounts.

61. Dr. Prpa suffered damages because of Defendant's actions, and demands full reimbursement and interest on the underpaid amounts in an amount that increases by the day.

## SIXTH CAUSE OF ACTION: BAD FAITH

62. Dr. Prpa re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

63. Wisconsin recognizes a common-law tort of bad faith by an insurer in handling claims. *See Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). An insurer is liable for bad faith when the insurer lacked a reasonable basis for its claims-handling decision, and that the insurer knew or recklessly disregarded the lack of a reasonable basis for its decision. To the extent supported by the particular patient's situation and the nature of that patient's insurance plan, Dr. Prpa asserts this claim through assignments of benefits, where appropriate and applicable.

64. Defendant accepted and retained the benefits of Dr. Prpa's services without providing just compensation to Dr. Prpa, and rejected payment of these claims, and has otherwise acted in bad faith through its appeal process and the IDR process.

65. Additionally, in violation of Wis. Admin. Code § Ins 6.11(3), UHC committed several unfair claims settlement practices, including:

   a. § 6.11(3)(a)4: Failure to attempt in good faith to effectuate fair and equitable settlement of claims in which liability has become reasonably clear;

   b. § 6.11(3)(a)10: Compelling insureds and claimants to institute suits to recover amounts due under policies by offering substantially less than the amounts ultimately recovered;

   c. § 6.11(3)(a)13: Adopting a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept lesser amounts – directly applicable to UHC's refusal to honor the IDR determination; and

d.  § 6.11(3)(b)1: Knowingly misrepresenting pertinent facts or policy provisions relating to coverages (issuing prior authorizations with no intention of honoring them).

66. Dr. Prpa suffered damages as a result of Defendant's actions in the amount of at least $5,029,025.79, in addition to attorneys' fees and the cost of bringing this suit, and interest on the amounts outstanding.

## SEVENTH CAUSE OF ACTION: ATTORNEYS' FEES FOR BAD FAITH

67. Dr. Prpa re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

68. Attorneys' fees incurred in prosecuting a bad-faith claim are recoverable as an item of compensatory damages caused by the insurer's tortious conduct. *See Stewart v. Farmers Ins. Grp.*, 321 Wis. 2d 391, 773 N.W.2d 513 (Ct. App. 2009). In a bad faith action, attorneys' fees do not remain attorney fees, but instead become an element of the damages resulting from the tort of bad faith. *Id.* Reasonable litigation expenses incurred in successfully prosecuting a bad faith claim are recoverable compensatory damages. *See Allied Processors, Inc. v. W. Nat'l Mut. Ins. Co.*, 246 Wis. 2d 853, 631 N.W.2d 268 (Ct. App. 2001).

69. Through the process of prosecuting this action, Dr. Prpa has incurred, and will incur, substantial attorneys' fees, costs, and other expenses, which compensatory damages to which he is entitled to recover from UHC.

## EIGHTH CAUSE OF ACTION: PUNITIVE DAMAGES FOR BAD FAITH

70. Dr. Prpa re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

71. Punitive damages are available in Wisconsin bad faith tort actions if the insurer "acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Wis. Stat. § 895.043; *Strenke v. Hogner*, 279 Wis. 2d 52, 694 N.W.2d 296 (2005).

72. UHC's pattern of denying payment for preauthorized claims, combined with its refusal to honor a binding IDR determination, and the flagrant use of a process designed to frustrate reimbursement of claims is an "intentional disregard" of the rights of UHC's members and the providers serving their needs. Each instance of denial, refusal, and obfuscation after prior authorization strengthens the pattern of evidence that supports an award of punitive damages, up to twice the amount of compensatory damages awarded. Wis. Stat. § 895.043(6).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant for payment in the amounts of all remaining underpayments of at least $5,029,025.79, pre- and post-judgment interest, costs of court, reasonable and necessary attorneys' fees incurred, punitive and exemplary damages as applicable, and such other and further relief of which the Court deems just and proper.

## PLAINTIFF DEMANDS A JURY TRIAL BY 12 PERSONS.

Dated: March 13, 2026

        HUSCH BLACKWELL LLP
        *Attorneys for Plaintiff,*

        By: <u>s/ *Patrick M. Harvey*</u>

        Patrick M. Harvey
        511 North Broadway, Suite 1100
        Milwaukee, WI 53202
        Telephone: (414) 273-2100
        Facsimile: (414) 223-5000
        patrick.harvey@huschblackwell.com